IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **AUDIOEYE, INC.,**<br>    **Plaintiff,**<br><br>  *v.*<br><br>**ACCESSIBE LTD.,**<br>    **Defendant.** | **PUBLIC VERSION**<br><br>6:20-cv-997-ADA |

**ORDER GRANTING ACCESSIBE'S MOTION TO RECONSIDER
AMENDED ORDER DENYING MOTION TO TRANSFER VENUE
TO THE WESTERN DISTRICT OF NEW YORK [ECF No. 71]**

Came on for consideration this date is Defendant accessiBe Ltd.'s Motion to Reconsider Amended Order Denying Motion to Transfer Venue to the Western District of New York, filed December 13, 2021. ECF No. 71 (the "Reconsideration Motion"). Plaintiff AudioEye, Inc. filed an opposition on December 27, 2021, ECF No. 73, to which accessiBe replied on January 3, 2022, ECF No. 74. After careful consideration of the Reconsideration Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** the Reconsideration Motion.

### I. BACKGROUND

Plaintiff AudioEye first filed suit against accessiBe on September 4, 2020, in the Austin division of the Western District of Texas. No. 1:20-cv-00924, ECF No. 1. On October 26, 2020, it voluntarily dismissed that case, No. 1:20-cv-00924, ECF No. 13, and refiled this case in Waco the same day, ECF No. 1. AudioEye filed its second amended complaint on December 29, 2020. *See* ECF No. 13 ("SAC").

accessiBe is registered and located in Israel. ECF No. 21 at 3. It does not have any locations in the United States or employees located here. *Id.* AudioEye is based in Tucson, Arizona and incorporated in Delaware. ECF No. 13 ¶ 11.

1

The SAC alleges that accessiBe infringes nine related patents. The SAC also includes Lanham Act claims for False Advertising and Product Disparagement (collectively the "Lanham Act claims"). It further includes five New York state law claims for Product Disparagement, Slander/Defamation, Tortious Interference with Prospective Economic Advantage, Deceptive Business Practices, and Unjust Enrichment (collectively the "NYSL claims"). The Lanham Act claims and the NYSL claims (collectively the "Non-Patent claims") relate to conduct alleged to have occurred while marketing accessiBe's products, and more specifically, accessiBe's statements regarding accessiBe's or AudioEye's products and/or services that AudioEye alleges to be false, misleading, or disparaging.

Consistent with most of the Non-Patent Claims being brought under New York law, Plaintiff has focused on accessiBe's alleged conduct regarding three entities located in New York: the Marketing Association for the Finger Lakes Wine Country of New York ("Finger Lakes"), Hoselton Auto Mall ("Hoselton"), and an unnamed potential consumer in New York (eventually revealed to be AudioEye personnel). ECF No. 13 ¶¶ 189–191; ECF No. 37 at 4. The Lanham Act and unjust enrichment claims rely at least on the same set of underlying allegations as the NYSL claims, or explicitly reference Finger Lakes or Hoselton.

On March 8, 2021, accessiBe filed a motion to transfer venue under 28 U.S.C. § 1404(a) to the U.S. District Court for the Western District of New York ("WDNY") or, in the alternative, dismiss for lack of personal jurisdiction. ECF No. 21 (the "Transfer Motion"). The Parties conducted venue and jurisdictional discovery and on October 18, 2021, the Court entered an order denying the relief sought in the Transfer Motion. ECF No. 51.

Though satisfied that the WDNY is a clearly more convenient venue, the Court denied transfer because accessiBe failed to show that venue and jurisdiction are proper in the WDNY. *See*

2

*generally id.* On November 3, 2021, the Court issued an amended order correcting its erroneous holding as to venue but maintaining that accessiBe failed to show that jurisdiction was proper in the WDNY. ECF No. 60 (the "Amended Transfer Order"). On November 5, 2021, accessiBe filed a petition for a writ of mandamus, seeking to reverse the amended order's denial of transfer. *See* Petition, *In re AccessiBe, Ltd.*, No. 22-113, ECF No. 2 (Fed. Cir. Nov. 5, 2021). On December 6, 2021, the Federal Circuit denied that petition, stating that it would not be futile "for accessiBe to ask the district court to first reconsider its decision in light of its arguments." *In re AccessiBe Ltd.*, No. 2022-113, 2021 U.S. App. LEXIS 35858, at *3 (Fed. Cir. Dec. 6, 2021). On December 13, 2021, accessiBe filed its Reconsideration Motion. That Motion is now ripe for judgment.

## II. LEGAL STANDARD

### A.  Reconsideration

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (alterations in original) (quoting Fed. R. Civ. P. 54(b)). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336 (quotation marks omitted). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear . . . [s]uch a motion requires the Court to determine whether reconsideration is necessary under the circumstances." *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014) (quotation marks omitted).

### B.  Transfer Under 28 U.S.C. § 1404(a)

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides

3

that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the

4

transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

**A.     Reconsideration and Jurisdiction in the WDNY**

The Court disagrees with accessiBe that the Amended Transfer Order offended the "party presentation rule," constituting a "drastic[] . . . abuse of discretion." ECF No. 71 at 10. This Court did not adduce new evidence. This Court did not present new arguments. accessiBe had a burden. The Court determined that accessiBe fell short of it. accessiBe recognizes that Parties "are responsible for advancing the facts and arguments entitling them to relief," yet it shirked its responsibility to advance facts and arguments entitling it to its requested relief: transfer under § 1404(a). ECF No. 71 at 9 (quoting *Baude v. United States*, 955 F.3d 1290, 1303–04 (Fed. Cir. 2020)). It then laid blame at this Court's doorstep. The Court would have drawn nearer to offending the party presentation rule had it done as accessiBe suggests and, on the briefing before it at the time of the Amended Transfer Order, made accessiBe's arguments for it—including corralling

5

relevant evidence and citing and applying New York, Federal Circuit, and Second Circuit law—to conclude that jurisdiction lays in the WDNY for all the asserted claims (including those untouched by accessiBe's Rule 12(b)(2) challenge).

The Reconsideration Motion, however, lays out sufficient facts, arguments, and law to convince this Court that the WDNY has personal jurisdiction over AudioEye for all the asserted claims. *See* ECF No. 71 at 5–8. AudioEye does not dispute that jurisdiction is proper in the WDNY. accessiBe has overcome the threshold question vexing its Transfer Motion. Revisiting this Court's Amended Transfer Order will not work too great a prejudice against AudioEye, so the Court will proceed to balance the conveniences under § 1404(a).

B. **Private Interest Factors**

1. Relative Ease of Access to Source of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of physical documents and other evidence; and the hardware storing the relevant electronic

6

documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021), *vacated on other grounds*, *In re Pandora Media, LLC*, No. 2021-172, 2021 U.S. App. LEXIS 30963 (Fed. Cir. Oct. 13, 2021).

*Party Evidence.* accessiBe states that its sources of proof are located in Israel, where accessiBe's marketing efforts are based and where it researched, designed, and developed the accused instrumentality that is the focus of the patent claims. ECF No. 21 at 6. accessiBe also alleges that to the extent there is relevant information on acessiBe's servers, those are located in New York or abroad. *Id.* at 4; ECF No. 21-1 ¶ 6 (testifying that accessiBe's hosting server is located in New York, with a backup in Europe). Evidence located in Israel and Europe is neutral under this factor because such evidence is remote from the WDNY and this District. But this Court has repeatedly recognized that the location of hardware storing relevant electronic documents bears on convenience. *See, e.g.*, *Bluebonnet*, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1. So the location of accessiBe's servers in New York is accorded some weight.

accessiBe further contends that there are two members of AudioEye's sales team residing in New York—Emily Baksic and Randall Heller—who purportedly interacted with accessiBe's sales team, performing what accessiBe refers to as "stealth competitive intelligence." ECF No. 37 at 2. AudioEye's SAC references that interaction and accessiBe asserts that these two AudioEye personnel likely maintain evidence in New York regarding that interaction. *See id.* AudioEye notes that, to the extent it even maintains relevant documents in its New York office, it would also have relevant documents at its headquarters in Arizona and its office in Portland. ECF No. 34 at 15. And its documents are primarily stored in the cloud and IT personnel managing the cloud environment reside in Georgia. *Id*.

7

The Court gives weight to information that may reside in AudioEye's New York office, including that maintained by Mr. Heller, who AudioEye itself recognizes as a relevant witness. ECF No. 34 at 18. But it also gives some shrift to evidence purportedly located with AudioEye in Arizona and Oregon.

*Non-party Evidence.* AudioEye argues that accessiBe has ▮ customers in Texas and they may have information relevant to induced infringement and purchasing decisions relevant to the Lanham Act claims. ECF No. 34 at 14. accessiBe notes in response that it has "▮ customers in New York." ECF No. 37 at 3.

AudioEye also asserts that accessiBe has strategic partners in Texas with evidence relevant to the Lanham Act claims. ECF No. 34 at 14. For example, Texas-based RealPage was in talks with AudioEye before accessiBe solicited it with marketing materials including the allegedly false and misleading statements. *Id.* AudioEye alleges that RealPage possesses evidence about these statements and the damages accessiBe caused AudioEye. *Id.* Moreover, Austin-based BigCommerce and Volusion, two of accessiBe's strategic partners, purportedly have "evidence about accessiBe's marketing efforts that relate to the Lanham Act claims." *Id.* According to AudioEye, accessiBe offers BigCommerce and Volusion "financial incentives to sell accessiBe's accused tool to [their] customers" and marketing materials to aid sales efforts. *Id.* at 5. accessiBe acknowledges that these two companies "can influence the decision of a very large group of people." *Id.* AudioEye contends that Volusion and BigCommerce help accessiBe disseminate its allegedly false and misleading statements. *Id.* accessiBe provides evidence, however, of its nationwide strategic partnerships, including at least three in the tristate area.

The Court accords little to no weight to the location of evidence retained by accessiBe customers and strategic partners. AudioEye has not represented that accessiBe's Texas customers

8

and partners maintain any evidence a New York customer or partner would not have. *See Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *3 (W.D. Tex. July 2, 2020) (disregarding customers in the forum because it was unlikely they maintained unique evidence regarding indirect infringement). For example, AudioEye remarks that RealPage has evidence about allegedly "false and misleading statements" because accessiBe sent it marketing materials. ECF No. 34 at 4–5, 14–15. The Court finds it unlikely that RealPage is unique among accessiBe's partners in receiving accessiBe marketing material. The accessiBe marketing materials AudioEye attaches to its opposition are generic; there is no evidence that materials were especially made for accessiBe's Texas partners. *See* ECF No. 34 at 14–15. There are specific emails directed at RealPage but the Court is not convinced these reveal relevant information unlike anything shared with other partners beyond Texas. In addition, it seems likely that the evidence AudioEye would solicit from accessiBe's partners, like communications accessiBe directs at its partners, is cumulative of that which AudioEye can discover from accessiBe itself when discovery opens. The Court, therefore, accords the location of accessiBe's customers and partners little to no weight in this analysis. The same rationale also militates against according weight to accessiBe customers and partners under the next two factors.

There is one exception: the Court will not disregard evidence possessed by Finger Lakes and Hoselton. The SAC founds many of its NYSL claims on conduct directed at New York-based Finger Lakes and Hoselton. *See* ECF No. 13 ¶¶ 185, 189–191, 198–201, 207–08, 213. The NYSL claims have different elements from the federal claims and are naturally centered on conduct arising from New York or directed at New York residents. *See* ECF No. 37 at 2. It is therefore more likely that Finger Lakes and Hoselton, as the New York residents AudioEye has placed at issue, maintain unique and relevant evidence bearing on the NYSL claims.

9

In sum, this factor favors transfer. Evidence in favor of transfer includes evidence maintained by Finger Lakes and Hoselton, accessiBe documents maintained on New York-based servers, and evidence maintained by New York-based AudioEye personnel. Only the evidence AudioEye maintains in Arizona and Oregon favors maintaining this Action here, and only slightly so given their distance from Texas. The evidence favoring transfer overwhelms the evidence against it.

2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses

10

and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

accessiBe asserts that New York-based Finger Lakes and Hoselton are particularly important to the Non-Patent Claims because "[t]hey would provide relevant information regarding, for example, the extent to which the allegedly false statements impacted their choice in accessibility products, their reasons for choosing accessibility products that are unrelated to the allegedly false statements, or any effort expended by Plaintiff as a result of any allegedly false statements." ECF No. 21 at 7.[1]

The same rationale supporting this Court's finding that Finger Lakes and Hoselton maintain relevant evidence further supports a finding that Finger Lakes and Hoselton personnel likely possess relevant knowledge. And because such personnel are likely located in New York, the WDNY may be able to compel their testimony (or likely the testimony of any other New York customer or partner); this Court cannot. The Parties do not identify any other relevant witnesses that this Court or the WDNY can compel to testify. (As indicated *supra*, this Court will disregard witnesses associated with accessiBe's Texas-based customers and partners.) Accordingly, this factor favors transfer.

---

[1] accessiBe also places these witnesses under the willing-witnesses factor. Because they are non-parties and nothing in the record suggests they are willing to travel to testify, the Court will only consider them under the compulsory-process factor.

11

3. <u>Cost of Attendance of Willing Witnesses</u>

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d at 1340; *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all*

12

when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

accessiBe argues that WDNY would be more convenient for accessiBe's Israeli personnel because all flights from Israel to Austin already include a connection in New York. ECF No. 21 at 9. accessiBe specifically identifies Dekel Skoop, its Chief Operations Office, as having knowledge about accessiBe and its operations. ECF No. 21-1 ¶ 3. Mr. Skoop also testifies that "[a]ll of accessiBe's engineers who are knowledgeable about the design and functionality of the accused accessiBe software are located in Israel." *Id.* ¶ 5. All employees responsible for accessiBe's "[s]ales, marketing, customer support, finances and interactions with third party accessibility organizations . . .are also based in Israel." *Id.* The Court accords the convenience of these Israeli-based witnesses little weight; they will travel a significant distance irrespective of transfer. Flights from Israel to the United States may have to connect through New York City—which is not in the WDNY—but that does not transform New York City into the *de facto* residence for accessiBe's witnesses under this factor.

accessiBe also contends that "[t]o the extent [AudioEye's] New York office houses employees more knowledgeable about New York customers and potential customers," the WDNY would be more convenient for them. ECF No. 21 at 9. AudioEye accedes that its VP of Sales, Randall Heller, lives in New York and has knowledge relevant to damages and accessiBe's marketing and business practice. ECF No. 34 at 18. But it also names the following AudioEye personnel as having relevant knowledge: Hawaii-based Sean Bradley is a named inventor on the Asserted Patents and has knowledge regarding the claimed invention, AudioEye's products and services, and accessiBe's business practices; Oregon-based Dominic Varacalli is AudioEye's President and has knowledge relevant to developments of the Asserted Patent's claimed invention,

13

AudioEye's products and services, and accessiBe's marketing and business practices; Georgia-based David Pinckney is a named inventor and has knowledge of the developments of the claimed invention; and Arizona-based Tyler D'Amore is an AudioEye VP with knowledge of AudioEye's products and services, damages related to accessiBe's accused conduct, and accessiBe's marketing and business practices. *Id.* at 17–18. AudioEye contends that these four witnesses reside nearer this District than the WDNY. *Id.* at 18.

Mr. Heller's presence in New York favors transfer. Yet, under the 100-mile rule, this District is, in this Court's judgment, more convenient for the other four AudioEye personnel, though, for some, only marginally so.

The Parties each argue that post-filing events affect the convenience analysis. This Court is comfortable considering post-complaint facts in evaluating convenience. *See Unification Techs. LLC v. Micron Tech., Inc.*, No. 6:20-cv-500-ADA, 2022 U.S. Dist. LEXIS 4127, at *9–11 (W.D. Tex. Jan. 10, 2022) (interpreting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). AudioEye asserts that its General Counsel and Senior Counsel reside in this District. ECF No. 73 at 9 n.2. Their convenience is owed no weight without a representation as to the relevant knowledge they possess. AudioEye also represents that Ms. Baksic, one member of the New York-based AudioEye sales team referenced *supra*, has since left AudioEye and New York for another opportunity in Florida. ECF No. 73 at 9 n.2; ECF No. 39 ¶ 2. With any indication that she is obligated to travel to testify in this Action, the Court does not regard her as a willing witness—nor will the Court consider her under the compulsory process factor, given that she has moved beyond the authority of the WDNY.

accessiBe argues that "much of accessiBe's leadership is now based in New York." ECF No. 71 at 2. It did not provide an affidavit to that effect. In its Transfer Motion briefing, Mr. Skoop testified that he, along with another accessiBe founder, Gal Vizel, were "*in the process* of

14

relocating to New York," where accessiBe's U.S. subsidiary has leased office space. ECF No. 37-1 ¶ 4. The Court is satisfied that Mr. Vizel—accessiBe's Chief Revenue Office, with knowledge of accessiBe's U.S. sales and marketing operation—and Mr. Skoop have relevant knowledge. And though it has no evidence that Mr. Vizel and Mr. Skoop have completely relocated to New York, the Court is satisfied that accessiBe's establishing a place of business in New York may render the WDNY somewhat more convenient for Mr. Vizel and Mr. Skoop, at least relative to this District.

The WDNY is more convenient for Mr. Heller and likely slightly more convenient for Mr. Vizel and Mr. Skoop. Waco is more convenient for Mr. Bradley, Mr. Varacalli, Mr. Pinckney, and Mr. D'Amore, but not by a wide amount. The Court finds, then, that this factor favors transfer, but only slightly.

4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on

considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *12 (Fed. Cir. Oct. 13, 2021). Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

Neither Party made a particularly cogent or compelling case under this factor, so the Court finds it neutral.

    C.    **Public Interest Factors**

        1.  <u>Court Congestion</u>

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and/ economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

AudioEye cites statistics showing that the average time to trial in the WDNY is "more than four years." ECF No. 34 at 19. AudioEye further argues that this factor weighs against transfer because of Covid-related delays in the WDNY. ECF No. 34 at 19. accessiBe concedes that this

16

factor "at-most, weighs slightly in favor of this Court." ECF No. 21 at 11. The Court finds that this factor favors maintaining this Action here.

    2. <u>Local Interests</u>

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

AudioEye argues that this factor weighs against transfer because accessiBe has customers in Texas and strategic partners here. ECF No. 34 at 19. accessiBe argues that this factor favors transfer because the events giving rise to the Non-Patent claims "involve alleged conduct

17

with regard to customers or potential customers," like Hoselton and Finger Lakes, in the WDNY. ECF No. 21 at 10. The Court finds that Texas and New York have an equally strong interest in resolution of the federal claims. But this factor favors transfer because the NYSL claims naturally center on conduct arising from New York or directed at New York residents. The state of New York and its residents, therefore, have an interest in the outcome of these disputes.

3. Familiarity of the Forum with Law-At-Issue

The familiarity of the forum state with governing law should only be considered a public-interest factor weighing in favor of transfer if the governing law is "exceptionally arcane." *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 68 (2013). The Supreme Court has held that "federal judges routinely apply the law of a State other than the state in which they sit." *Id.* A portion of this Action is premised on New York state law. This factor is neutral or only slightly favors transfer because this Court is confident in its ability to apply New York state law.

4. Conflict of Laws

The Parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs slightly in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral or slightly favors transfer |

| Problems associated with conflict of law | Neutral |
|---|---|

Two private interest factors and one public interest factor weigh in favor of transfer. Only the docket-congestion factor weighs against transfer. Given the foregoing, the Court finds that accessiBe has shown that the WDNY is clearly more convenient than this District. accessiBe's Motion, ECF No. 71, is therefore **GRANTED**. The Court **ORDERS** that:

- the Amended Transfer Order, ECF No. 60, is **VACATED** and **SUPERSEDED**;
- the discovery hearing set for March 11, 2022 is **VACATED**;
- the above-captioned case is transferred to the Western District of New York.

SIGNED this 9th day of March, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE